## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

PLAINTIFFS NOS. 1 - 7,              )

                            )     Case No: 1:18-72

      Plaintiffs,          )

                            )     COMPLAINT AND

v.                            )     JURY DEMAND

                            )

                            )

IDEAL SNACKS CORPORATION,    )

                            )

      Defendant.         )

_____)

## I.   PRELIMINARY STATEMENT

1. Plaintiffs Nos. 1 – 7 (hereafter collectively "Plaintiffs") worked for Defendant Ideal Snacks Corporation in their food manufacturing plant located in Liberty, New York, at various times throughout the period from 2007 – 2015, in packing and preparation positions.

2. Plaintiffs worked under various supervisors, including Manuel Malaga, Santiago Malaga, Andres Malaga, Julio Morales, Pedro (last name unknown, hereafter "Pedro LNU"), Felix Malariaga, Melecio Gomez, and others, who, upon information and belief, were in charge of supervising different departments on different shifts in the plant.  Each of the supervisors engaged in sexual or gender-based harassment and behaviors.

3. Marvin Cardenas, the Plant Manager, also participated in the sexual or gender-based harassment of Plaintiffs.  Upon information and belief, Cardenas had supervisory authority over everyone working in the plant.

4. Throughout their respective periods of employment, Plaintiffs were subjected to gender-based discrimination, sexual harassment, and retaliation by Defendant, through its managers and supervisors.

5.  The discriminatory and retaliatory actions visited upon Plaintiffs by their supervisors and the Plant Manager include, among other things: (a) assigning Plaintiffs to the most undesirable positions, such as cleaning the bathrooms and kitchen; (b) refusing Plaintiffs' requests for shift changes to accommodate their handling of family crises; (c) refusing to consider Plaintiffs for pay raises; (d) hovering over Plaintiffs while they were working to make overtures toward Plaintiffs regarding starting a sexual relationship with them, and then upon Plaintiffs' refusals, hovering to point out fabricated "errors" in their work; (e) requiring Plaintiffs to state the reasons that they needed bathroom breaks before granting them a pass to use the bathroom, and also retaliating against Plaintiffs by denying them such breaks when they refused the supervisors' and Plant Manager's overtures; and (f) assigning Plaintiffs to positions requiring heavy lifting after learning of Plaintiffs' injuries and requests for accommodation.  Upon information and relief, no male worker in the plant suffered from any of this actions, misdeeds, or retaliation.

6.  The harassment was incessant—occurring on virtually a daily basis and often several times in a single day—and continuous—occurring day after day—and included offensive, sexually graphic, lewd, threatening, degrading, ridiculing, intimidating, alienating, and highly inappropriate comments and insults.

7.  Plaintiffs were subjected to derogatory comments about their manner of dress, parts of their bodies, personal and intimate relationships, children, and occupational abilities by male supervisors on a daily basis until their employment was terminated.  This verbal abuse was constant, creating an atmosphere that affected Plaintiffs' self-esteem, and their ability to concentrate and perform their work with confidence.  Male co-workers were not subjected to the same treatment or behaviors; no comments were made by Defendant's supervisors about male

workers' manner of dress, anatomy, personal and intimate relationships, children, or occupational abilities.

8. Plaintiffs were also subjected to invasive, humiliating, and offensive touching--including being grabbed on their buttocks while they were bent over cleaning machines—while they were working in their positions or being taken by a supervisor to isolated parts of the Plant.

9. The harassment and discrimination experienced by Plaintiffs was extremely stressful, causing several of the Plaintiffs to request changes to their work schedules in order to avoid seeing specific supervisors who had engaged in offensive behaviors.

10. Plaintiffs' supervisors retaliated against them for refusing to engage in their sexual banter or vulgar exchanges by forcing them to endure questions about intimate subjects such as their menstrual cycles as well as other harassing comments when they asked for a bathroom pass. No other employees were subjected to such treatment.

11. Plaintiffs' supervisors also retaliated against them by assigning them the heaviest work in the facility, telling them that they should see what the men "are doing for them," or assigning them to the laundry and to clean bathrooms and the kitchen. When Plaintiffs refused an apparent *quid pro quo* offer to transfer to a less arduous unit, they were denied raises, sometimes for years afterward.

12. Neither Mr. Cardenas nor any other member of management took any action to address Plaintiffs' complaints. Instead, Mr. Cardenas retaliated against Plaintiffs when they reported supervisors' sexually harassing behaviors by threatening Plaintiffs with immediate termination. Floor supervisors retaliated against Plaintiffs by refusing all requests for accommodation of illnesses and requests for shift changes in order to handle important family matters.

13. All Plaintiffs suffered severe emotional distress as a result of their harassment.  In addition, some Plaintiffs suffered physical injuries as a direct result of their floor supervisors' retaliatory behavior.

## II. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises from a federal claim under, 42 U.S.C.A. § 2000e-2, inasmuch as the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.

15. Plaintiffs 1 – 7 filed complaints with the U.S. Equal Employment Opportunity Commission ("EEOC") on February 18, 2016, alleging violations of Title VII of the Civil Rights Act of 1964, including sex and gender-based discrimination, sexual harassment, and retaliation.  On October 6, 2017, Plaintiffs received their Right to Sue Letter from the EEOC.

16. This Court has supplemental jurisdiction over all related state claims pursuant to 28 U.S.C. § 1367 because the state claims are so related to the federal claims that they form part of the same case or controversy.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this district.

### III. PARTIES

**Plaintiffs**

18. Plaintiffs 1 – 7 are natural persons who, at all relevant times, have lived in or maintained her permanent residence in New York State.

19. Each Plaintiff was an "employee" of Defendant IDEAL SNACKS CORPORATION (hereafter "IDEAL SNACKS") within the meaning of 42 U.S.C.A. § 2000e-2 and N.Y. Exec. Law § 296.

20. All Plaintiffs reside in Sullivan County, New York.

**Defendant**

21. Defendant IDEAL SNACKS  is a New York registered company, located at 89 Mill Street, Liberty, New York 12754.

22. Defendant IDEAL SNACKS is an "employer" within the meaning of 42 U.S.C.A. § 2000e and N.Y. Exec. Law § 292.

23. All of the actions and omissions of Defendant were undertaken by Defendant and/or its managing personnel when she worked the evening shift during the period from 2012 through 2015.

24. Defendant knew, or should have known, of the practices, acts, and unlawful behaviors alleged.

25. Supervising personnel, including Manuel Malaga, Santiago Malaga, Andres Malaga, Julio Morales, Pedro LNU, Antonio (last name unknown, hereafter "Antonio LNU"), Felix Malariaga, Melecio Gomex, other supervisors, and Marvin Cardenas, the Plant Manager, worked for Defendant supervising Plaintiffs at all relevant times.

26. Defendant's supervisory personnel retaliated against Plaintiffs who refused to engage with those who were harassing and assaulting them by assigning them to arduous physical work and less

desirable positions, refusing to raise their wages when all others in the same positions were receiving them, denying requests for shift changes to accommodate family needs while others received such accommodations, denying request for physical accommodations due to injuries and instead assigning them to positions that would aggravate their conditions, and threatening them with discharge.

## IV. FACTUAL ALLEGATIONS

### A.  Plaintiff 1

27. Plaintiff 1 was an employee of Defendant IDEAL SNACKS from March 2011 through May 2015, when she was laid off.  Plaintiff 1 worked in the Packaging Unit.  Plaintiff 1 worked under supervisor Manuel Malaga when she worked on the day shift from 2011 through 2012, and worked under supervisor Felix Malariaga when she worked on the night shift from 2012 through 2015.  During all relevant times, Marvin Cardenas was the manager of the plant.

28. Santiago Malaga frequently harassed Plaintiff 1 by insisting that she follow his orders and finish the tasks he assigned to her, using an offensive tone.  He ridiculed and humiliated Plaintiff 1 by moving her repeatedly from one work station to another and by yanking her from the task she was completing and ordering her to do tasks in another part of the warehouse.  Santiago did not move other male or female workers around on his whim the way he did with Plaintiff 1.

29. Santiago told Plaintiff 1 that if she just listened to him and met his demands, he would stop his harassment of her.

30. When Plaintiff 1 reported Santiago's behavior to Marvin Cardenas, the Plant Manager, he threatened to fire her if she continued to complain about Santiago Malaga's behavior.

31. Upon information and belief, no action was ever taken by Defendant to address Santiago Malaga's harassing and intimidating behavior.

32. Santiago Malaga frequently made inappropriate and intimate proposals to Plaintiff 1, including asking her to date him and offering her a better position, higher wages, and other benefits at work if she accepted his proposal to have a relationship with him.

33. Santiago Malaga frequently approached Plaintiff 1 while she was working to move her to more isolated places in the warehouse.  During these interactions, Santiago Malaga would tell Plaintiff 1 that if she did what he wanted of her, he would see it to that she would get higher wages and a better position.  He assured Plaintiff 1 that if she submitted to his advances, he would tell management that she was a good worker and would arrange for her to have a better position—one in which she would not have to stand on her feet all day.

34. On or about August 2013, Santiago Malaga grabbed Plaintiff 1' buttocks when she was bending over to clean one of the machines.  When Plaintiff 1 immediately confronted him, Santiago Malaga told Plaintiff 1 not to report the incident to anyone.

35. After repeatedly rejecting Santiago Malaga's advances, Plaintiff 1 told him that she planned on complaining to management about his inappropriate behavior.  In response, Santiago told Plaintiff 1 that management would take his side on such matters, telling her that he was "like a son to Marvin Cardenas" and that "various women have complained about me and they were fired, but I am still here."

36. When Plaintiff 1 reported Santiago Malaga's unacceptable behavior to Marvin Cardenas, the Plant Manager, Cardenas told her that "all women are whores.  They go out with men and then complain when they don't leave them alone.  You are all at fault."

37. Cardenas then threatened to call immigration officials if Plaintiff 1 insisted on continuing with her reports of the sexual harassment she experienced by Santiago Malaga.

38. After Plaintiff 1 complained to Marvin Cardenas about Santiago's sexual harassment, Santiago was not fired--or even disciplined or admonished--but instead was moved from the night shift to the day shift where he earned higher wages.

39. Santiago Malaga's harassment of Plaintiff 1 continued after she reported his conduct, becoming more and more punitive and retaliatory.  Plaintiff 1 continued working in the evening shift until approximately four months after the meeting when Marvin Cardenas offered her husband the evening shift and moved her to the day shift.

40. Once Plaintiff 1 was working on the day shift and was under Santiago's supervision again, Santiago constantly switched her to new positions and gave her work considered the most demeaning and difficult, such as cleaning the heavy machines.  Plaintiff 1 was moved repeatedly from one unit to another by Santiago.  Regardless of how many workers there were available, Santiago consistently singled Plaintiff 1 out for cleaning work.  At times, he switched her daily from one job to the next.

41. When Plaintiff 1 attempted to report Santiago's behavior to Marvin Cardenas, he threatened to fire her for "dealing with the same problem."  Cardenas told Plaintiff 1 that she was always looking for trouble and to stop her crying.

42. Santiago's harassment of Plaintiff 1 continued throughout 2012, 2013, 2014, and into 2015.

43. After Plaintiff 1 was laid off in May 2015, she was contacted by women workers who shared with her their stories of being sexually harassed at Defendant IDEAL SNACKS.

44. On or about this time, Marvin Cardenas contacted Plaintiff 1' husband and told him to tell Plaintiff 1 not to talk about the sexual harassment that she experienced.

45. Throughout Plaintiff 1' employment on a nearly daily basis and until her last day working for Defendant, Marvin Cardenas repeatedly referred to the women workers, including Plaintiff 1, in

disparaging and offensive terms, such as calling them "viejas cabronas," (meaning old fucking women).

**B. Plaintiff 2**

46. Plaintiff 2 was an employee of Defendant IDEAL SNACKS from April 2006 through May 2015 when she was laid off.  Plaintiff 2 worked in the Packaging Unit and in the Cleaning Unit. In the Packaging Unit, her primary responsibilities were to pack boxes with bags of snacks, such as chips.  In the Cleaning Unit, her responsibilities were to clean the machines that filled snack food bags and to change the flavors of the machines.  Plaintiff 2 worked under supervisors Andres Malaga, Julio Morales, Manuel Malaga, and Santiago Malaga.  Marvin Cardenas was the Plant Manager during the entirety of Plaintiff DÍAZ' period of employment.

47. Marvin Cardenas consistently spoke to Plaintiff 2 in a nasty and demeaning tone, rebuking her for any actions she took, and referred to her as a "nightmare."  Plaintiff 2 felt humiliated in front of her co-workers.

48. Andres Malaga would speak to Plaintiff 2 in a highly aggressive tone and told her that she "wasn't worth anything."

49. Andres would not assign Plaintiff 2 to new areas of work despite her request to learn other positions and take on additional responsibilities because of her refusal to participate in the continuing sexual banter, intimate inquiries, and requests for a relationship, offering such opportunities instead to other employees.

50. On or about 2009, a machine operator, Antonio LNU (last name unknown) was also working at Defendant's plant.  Antonio LNU would walk by workers with a ruler as they were working, and used the ruler to hit women workers as they worked.  Antonio LNU hit Plaintiff 2 on her buttocks with the ruler as she was bending over picking up boxes.  When Plaintiff 2 stood up

and asked Antonio LNU why he hit her, he did not offer either an explanation or apology. Plaintiff 2 tried to report this abusive behavior to Marvin Cardenas, the Plant Manager. Antonio LNU told Cardenas that he was just joking, and since he arrived at Marvin's office prior to Plaintiff 2' arrival, Marvin told her that the first person to report an incident is the person whose description will be given the most weight and importance. Marvin Cardenas told Plaintiff 2 that Antonio LNU had told him that she had purposely knocked down some boxes. When Plaintiff 2 disputed this, Marvin told her that she needed to work harder.

51. In 2009, Plaintiff 2 asked Marvin Cardenas why other workers with less seniority received pay raises before she was, he responded that that he had not noticed the discrepancy and that he was not surprised that she was not given a raise because she was "useless" and "not worth anything."

52. Also in 2009, Santiago Malaga transferred Plaintiff 2 from the Packaging Unit where she had been working to the "Chocolate" area, an area of work that was extremely hot. Plaintiff 2 requested a transfer from the "Chocolate" area back to a more tolerable area and environment, or at a minimum to alternate her turns in that area. Santiago refused.

53. In 2010, Marvin Cardenas asked Plaintiff 2 while she was working what she was carrying inside her blouse. When she answered that she was not carrying anything, he made a gesture that implied that she smelled bad.

54. Throughout 2010, Julio Morales repeatedly told Plaintiff 2 that he did not want her working there and that she should just quit. When Plaintiff 2 would ask for bathroom breaks, Julio either would not grant them or would unnecessarily delay them. One time when Julio refused her a bathroom break, Plaintiff 2 began to cry.

55. Plaintiffs and other Latino women workers were the only ones required to clean the facility machines. This required the women to climb a ladder to reach the machines which were located

on another level.  In order to clean the machines, female employees had to bend over and reach inside them.  In 2011, as Plaintiff 2 was cleaning a machine, Andres Malaga watched from below and commented out loud, "you can see her ass," as he and the other supervisors nearby began laughing.  On another occasion, after she cleaned the machines and returned to the plant floor, Andres Malaga told Plaintiff 2, "I can see your ass.  I can see all your asses the way you [all] stand."

56. At or around the same time, Andres Malaga told Plaintiff 2 and other Plaintiffs, "don't wear such tight pants because it's dangerous."

57. In 2013, Plaintiff 2 became pregnant.  After requesting to be placed on light duty during her pregnancy, Marvin Cardenas complained to her that she was "worthless."

58. In 2015, Plaintiff 2 reported to Marvin Cardenas that she had fallen in the plant, seriously injuring her elbow and knee.  Marvin callously reprimanded her, saying "you've already lost three (pregnancies)."

59. The supervisors and Marvin Cardenas frequently referred to Plaintiff 2, other Plaintiffs, and other Latino women workers as "viejas" (old women) or "viejas guevonas" (ugly old bitches), and made comments, such as "esas viejas no pueden ni caminar por vieja" (these old women can't even walk because they are so old and useless), on a nearly daily basis until Plaintiff 2' last day working for Defendant.

60. Andres Malaga, as Plaintiff 2' immediate supervisor, forbid Plaintiff 2 from speaking to her co-workers while working, focusing particularly on her attempts to talk with female co-workers. Andres kept a constant vigil over Plaintiff 2, making her feel uncomfortable while he stood over her waiting to find another reason to reprimand her.

61. Plaintiff 2 overheard Santiago Malaga tell a woman co-worker that she had a "nice ass."

62. At or around 2011, Santiago told Plaintiff 2 once that "you are so skinny; you don't even have an ass."

63. At or around 2012, Plaintiff 2 heard Santiago Malaga ask Andres Malaga, "I wonder if those tight pants that the women workers wear hurt their vaginas," while looking directly at women workers' intimate parts.

64. Andres Malaga, Santiago Malaga, Manuel Malaga, and Marvin Cardenas would often get together and make lewd and inappropriate comments about women workers during the work day.  Plaintiff 2 would frequently hear them comment out loud about women workers' apparel or autonomy, including comments such as "you can see her front parts in those pants" or "you can see her ass really well."

65. Plaintiff 2 was harassed by her supervisors whenever she would ask them for permission to go to the bathroom.  She also witnessed other women workers being harassed when they made similar requests.  Plaintiff 2 and the other women workers were told by Antonio LNU, a supervisor and machine operator, that they should wear diapers so that they would not need to go to the bathroom during the work day.

66. At times, Plaintiff 2 and other women workers were given assignments by their supervisors that they were incapable of performing, such as stacking boxes on pallets that were taller than them without providing them with any means of reaching the top of the stacked boxes.

67. Plaintiff 2 was afraid that if she reported the harassing conduct of her supervisors she would be verbally insulted or fired by Marvin Cardenas, who was understood by Plaintiffs as siding with the supervisors on the issue of complaints about discriminatory and harassing behavior. Cardenas' threats of discharge if Plaintiffs attempted to report the incidents of harassment or file a complaint had the effect of silencing them.

### C.  Plaintiff 3

68. Plaintiff 3 was an employee of Defendant IDEAL SNACKS from June 2009 through May 2015, when she was laid off.  Plaintiff 3 worked in the Packaging Unit where her primary supervisors were Manuel Malaga, Santiago Malaga, and Andres Malaga, and she periodically had contact with Julio Morales, Pedro LNU, and Marvin Cardenas.

69. In February 2015, Plaintiff 3 asked her supervisor, Pedro LNU, if she might be permitted to leave work early due to feeling ill from menstrual cramps.  Pedro LNU mocked Plaintiff 3 and attempted to humiliate her for being on her menstrual cycle, saying to her, "I know what mujercitas (little women) suffer from."  After Plaintiff 3 punched out and left the facility, another supervisor, Julio Morales, and Pedro LNU laughed at her as she walked away.  Plaintiff 3 was told by a nearby co-worker that Julio and Pedro LNU said she was not leaving because she felt ill but because she was going to go sleep with a man.

70. Julio Morales continually made offensive comments about the menstrual cycles of women workers.  In October 2013, Plaintiff 3 asked for a bathroom pass, giving as the required reason that she needed to go because of her menstrual cycle, and was denied a pass by Julio Morales, who told her that she needed to "hold it in."  When he was questioned about why he was being so rude to women workers, he merely responded by laughing.

71. In September 2011, Plaintiff 3 witnessed Julio Morales tell a fellow woman co-worker who was suffering from menstrual cramps that "you all complain and cry so much for such a simple thing."  When Morales continued to interrogate the co-worker in front of other workers about her menstrual cramps, the female co-worker began to cry.

72. In June 2014, Plaintiff 3 was taken to Marvin Cardenas' office, along with three other women, before she punched in the timeclock.  Marvin Cardenas spoke to Plaintiff 3 and the other

women workers present in a derogatory fashion, telling them that they were "callejeras" (street women/prostitutes) and "viejas chismosas de la calle" (old nasty women from the street) who were speaking of things that they were not supposed to discuss.  Plaintiff 3's co-worker, Gracia, who was present, started crying.  Marvin Cardenas told Plaintiff 3 and the women co-workers present that they could not comment on their conversation with anyone else at the facility.

73. In April 2012, Plaintiff 3 was cleaning machines when she saw a female co-worker, Maria Alvarado, who was also cleaning machines nearby, climb a ladder to reach the machines. Santiago Malaga walked by them from behind and grabbed Maria Alvarado's buttocks while she was on the ladder faced in the opposite direction.

74. When Plaintiff 3 and her fellow women workers would ask for the bathroom pass, their supervisors, particularly Santiago Malaga, Andres Malaga, and Marvin Cardenas, would respond in Spanish that "estas viejas solo quieren estar meando todo el dia" (these old women just want to urinate all day), or they would respond that "hay que ponerles pampers a estas viejas" (we have to put pampers on these old women).

75. Around November 2014, Plaintiff 3 overheard Manuel Malaga make comments about women workers who asked for a bathroom pass.  As they walked to the bathroom, Manuel Malaga would call them "viejas" ("old women").

76. Supervisors Manuel Malaga, Santiago Malaga, Andres Malaga, and Plant Manager Marvin Cardenas, would frequently make derogatory and insulting comments to women workers. Marvin Cardenas repeatedly referred to Plaintiff 3 and other Latino women workers as "viejas guevonas" ((ugly old bitches) and would say, "hurry up and work you 'viejas guevonas.'"  He repeatedly called Plaintiff 3 insulting and derogatory names, including "pinche vieja" (fucking old woman), lazy, "viejas cochinas" (old women pigs) or "viejas lloronas" (old crying women).

14

Supervisors Manuel Malaga, Santiago Malaga, Andres Malaga and Marvin Cardenas called Plaintiff 3 and her fellow women workers insulting names and speak in very disrespectful tones on a nearly daily basis until her last day working for Defendant.  Plaintiff 3 heard Marvin Cardenas say that a woman worker, who also happened to be his aunt, walked around like a female dog with shoulders.

77. Marvin Cardenas would often tell Plaintiff 3 and other Latino women workers to "hurry up and move your hands."

78. Marvin Cardenas frequently threatened Plaintiff 3 and women workers that "if there are any 'chismosas' (gossipers), you know what will happen to you," referring to his threats to fire those who complained about being harassed.

79. Felix Malariaga, a supervisor on the night shift, would frequently remark that the women workers "no sirven para nada" (aren't worth anything).  Many of the women workers left the area crying because of Felix' derogatory comments.

80. Felix Malariaga intrusively and inappropriately probed into the personal lives of women workers by asking inappropriate and intimate questions.  Felix often leered at Latino women workers as they walked by him.  In August 2014, Felix commented in front of Plaintiff 3 that a woman worker who walked past him with a male co-worker and commented, "you can tell she's fucking that guy."

81. On at least one occasion, Plaintiff 3 heard Plant Manager Marvin Cardenas commenting lewdly out loud in front of many workers on Latino women workers' apparel and bodies.  Marvin said at least one time around March 2013 concerning a woman co-worker that the "vieja (old woman) is so fine."

82. Julio Morales also frequently commented on women workers' apparel and bodies, and on at least one occasion in 2015, he commented in front of Plaintiff 3 about a women worker, saying "oh my God, look at how good-looking that woman is."

83. Although Plaintiff 3 found these repeated comments by various supervisors degrading and discriminatory, she was told by her supervisors Santiago Malaga, Andres Malaga, and Manuel Malaga not to complain or report them because Marvin Cardenas would fire her for doing so. Plaintiff 3' supervisors would threaten her if she objected to their treatment or comments by telling her, "do you want to go to Marvin (Cardenas)?"

84. Despite these warnings, Plaintiff 3 spoke up numerous times about the offensive treatment and language used by supervisors and told her various supervisors not to make such comments to her.  After complaining about this insults and assaults, Plaintiff 3 received harsher assignments by Santiago Malaga and Marvin Cardenas, such as cleaning hard-to-reach machines.  These assignments were given to her even when she was scheduled for light duty due to workplace injuries she had incurred.

**D.  Plaintiff 4**

85. Plaintiff 4 worked for Defendant IDEAL SNACKS from approximately March 2007 through May 2015, when she was laid off.  Plaintiff 4 worked in the Packaging Unit, and had various supervisors during the more than 8 years she worked at the plant, including Manuel Malaga, Santiago Malaga, and Andres Malaga, as well as Marvin Cardenas, the Plant Manager.

86. Plaintiff 4 often heard both Manuel Malaga and Marvin Cardenas use derogatory, gendered language directed at the women workers in the plant.

87. Plaintiff 4 witnessed several occasions in which plant supervisors grabbed female workers on their buttocks without solicitation by them.

88. During the period from 2012 through 2013, when Manuel Malaga was Plaintiff 4' supervisor, he continually asked her questions about her personal life, and told her that if she dated him she would receive better treatment and better company benefits, including working additional hours for overtime.

89. Manuel Malaga repeatedly approached Plaintiff 4 at her work station to talk to her throughout the work day, attempting to engage her in inappropriate conversations about her personal life and her interest in him personally.  When Plaintiff 4 asked Manuel Malaga why he followed her throughout the day, he responded that he did so because he was interested in dating her.  When Plaintiff 4 told him that she was not interested in a personal relationship with him, Manuel Malaga responded that she "was missing out" and that he had other "opportunities" at work.

90. Manuel Malaga told Plaintiff 4 on several occasions that he wanted to grab her by her waist.

91. Manuel Malaga told Plaintiff 4 that he wanted to kiss her.

92. Manuel Malaga would periodically come over to Plaintiff 4 and touch her on her back or shoulders or put his hand on top of her hand, despite Plaintiff 4 repeatedly telling him to not touch her.

93. On occasion, Manuel Malaga approached Plaintiff 4 and asked her why she was so afraid of him; Plaintiff 4 responded that she was not comfortable with his inappropriate advances and that she was married.

94. Manuel Malaga sexually harassed Plaintiff 4 for nearly two years throughout 2012 and 2013.

95. Plaintiff 4 was denied bathroom breaks for many hours by her supervisors, with this practice occurring frequently over a period of three years from 2010 through 2013.  As a result of this retaliatory practice, Plaintiff 4 developed urinary problems.

96. During the period from 2014 through 2015, when Plaintiff 4 requested time off from Manuel Malaga to tend to her disabled daughter, he insisted on asking her what she was going to do with her time off.  In or around 2015, when Plaintiff 4 requested time off to tend to her daughter, Manuel Malaga told her, "you're just going to go home to see and sleep with your husband."

97. Plaintiff 4 witnessed other workers complain to Marvin Cardenas about Manuel Malaga's interrogation of their requests for time off.  Plaintiff 4 noticed that those workers who complained to Marvin Cardenas were later fired (from both the day and night shifts).

98. In retaliation for their complaints about their treatment, supervisors, including Manuel Malaga, accused women workers of working more slowly than the male workers and called them "estúpida" (stupid), "viejas juevonas" (old bitches), "chismosas" (gossipy women), and other derogatory names, on nearly a daily basis until Plaintiff 4' last day working for Defendant.

99. When Plaintiff 4 complained about being assigned harder work by Manuel Malaga, he called her "cabrona" ("bitch" or "asshole") and told her that she didn't want to improve herself in life.

**E.  Plaintiff 5**

100. Plaintiff 5 was an employee of Defendant IDEAL SNACKS from February 27, 2011 until April 4, 2015, when she was laid off.  Plaintiff 5 worked in the Quality Control unit where her supervisors were Carla Orellana and Juanita Aguiles.  Marvin Cardenas was the Plant Manager during Plaintiff 5' employment.

101. Various supervisors, including Santiago Malaga, Manuel Malaga, and Marvin Cardenas, often used derogatory language with the women workers, including Plaintiff 5, calling them "pinches viejas" (fucking old women) and "fucking señoritas" on a nearly daily basis until Plaintiff 5' last day working for Defendant.

102. Plaintiff 5 and women co-workers were told repeatedly that they were not worth anything.

103. Plaintiff 5 reported the offensive comments to her direct supervisor Juanita Aguiles but they were never further reported as far as she was made aware of.

104. Plaintiff 5 was never made aware of any office policy on sexual harassment or whom to contact or file a complaint with.

105. Plaintiff 5 was afraid that she would be fired for reporting the offensive comments after hearing about the Plant Manager's comments when other women made complaints.

106. In February 2015, Marvin Cardenas noticed that Plaintiff 5 was pregnant and looked at her stomach and exclaimed, "wow, again?"

**F.  Plaintiff 6**

107. Plaintiff 6 was an employee of Defendant IDEAL SNACKS from November 2006 through May 2015, when she was laid off.  Plaintiff 6 worked in the Packaging unit where Andres Malaga and Santiago Malaga were her supervisors.  Marvin Cardenas was the Plant Manager during Plaintiff 6' employment.

108. Marvin Cardenas called Plaintiff 6 "guevona" (bitch or asshole) repeatedly and throughout her employment until her last day.

109. Plaintiff 6 heard him make similar derogatory comments to other women workers.

110. Marvin Cardenas frequently harassed women workers, including Plaintiff 6, and sent them to do the most challenging work, such as working with heavy machinery.

111. Marvin Cardenas commented to Plaintiff 6 once that he sent the women workers to these difficult areas so that "the women can see what kind of work they men are doing and learn from them." Marvin assigned harder jobs to women workers, such as Plaintiff 6, who could no longer perform their original jobs.  He assigned a woman co-worker of Plaintiff 6 a job as a bagger although her back no longer allowed her to lift heavy weights that the job as a bagger required.

112. Marvin Cardenas attempted to transfer Plaintiff 6 from the Packaging Unit to the Quality Control unit, however when she refused he told her that he would no longer give her raises since she didn't accept the job transfer.  The salaries of other workers were raised while Plaintiff 6 was not for five years.

**G.  Plaintiff 7**

113. Plaintiff 7 was an employee of Defendant IDEAL SNACKS CORP. from January 5, 2010 until May 2015, when she was laid off.  Plaintiff 7 worked in the Packaging unit. Julio Morales was her primary supervisor and Marvin Cardenas was the general plant manager.

114. Plaintiff 7 was occasionally sent to clean heavy machinery, which required bending over to clean inside them.  In April 2013, when she had been sent to clean the machines, Julio Morales told her to bend over with her legs open like other women did because he wanted to see what was in between her legs. When Plaintiff 7 objected to his comment, Julio began to assign her harder work, including assigning her a faster machine to work on or making her clean the machines, even when she felt ill and let him know.  Plaintiff 7 knew of other women workers who weren't liked by their supervisors and had been assigned harder work to do, such as working on the pallets. As a result of handling heavy and toxic chemicals while cleaning these machines, Plaintiff 7 developed a series of ailments and conditions, including falling from a machine and hurting herself as well as developing a burning sensation in her eyes that continues to plague her.  After complaining to Julio about the discomfort and pain, he told her that she was useless as a worker because of her ailments.

115. Plaintiff 7 reported Julio Morales' comments to Felix Malariaga, who she believed to be his supervisor.   Although Julio said that he would not make any further derogatory comments

directed at Plaintiff 7, she continued to experience harassment by him such as being pulled by her clothes when he wanted her attention.

116. In July 2010, Plaintiff 7 became pregnant.  In November 2010, she requested a shift change from my night shift to a morning shift.  She made the request to Marvin Cardenas, who denied her.  Plaintiff 7 requested a shift change again in January 2011 and Marvin told her that she shouldn't be working since she was a "panzona" (big-belly woman).

117. After returning to work in May 2011 after giving birth, Plaintiff 7 requested light duty.  Her supervisor, Julio Morales, assigned her work lifting heavy objects, despite her request not to. As a result of constantly lifting heavy objects after recently having given birth, Plaintiff 7 developed serious dislocation of her hip joints, for which she continues to receive physical therapy.

118. In the summer of 2013, Plaintiff 7 requested a shift change of Marvin Cardenas in order to tend to her young daughter, who had wondered out of the house one day.  Marvin responded that she should just buy a chain for her daughter that is sold in nearby stores and tie her to the bedpost so that she couldn't leave. Plaintiff 7 felt extremely disturbed and bothered by his suggestion.

# V. CLAIMS FOR RELIEF

## COUNT I
## DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF TITLE VII
## OF THE CIVIL RIGHTS ACT OF 1964
### (By All Plaintiffs Against Defendant)

119. Plaintiffs incorporate all of the preceding allegations as if fully set forth below.

120. Plaintiffs were subjected to continual, direct, intentional discriminatory treatment by Defendant, through the conduct of Defendant's supervisors and Plant Manager, during the entirety of their employment.

121. Defendant IDEAL SNACKS discriminated against Plaintiffs on the basis of their gender and created a hostile work environment for them and other women workers in the plant by, among other things: (a) assigning Plaintiffs to the most undesirable positions, such as cleaning the bathrooms and kitchen; (b) refusing Plaintiffs' requests for shift changes to accommodate their handling of family crises; (c) refusing to consider Plaintiffs for pay raises; (d) hovering over Plaintiffs while they were working to make overtures toward Plaintiffs regarding starting a sexual relationship with them, and then upon Plaintiffs' refusals, hovering to point out fabricated "errors" in their work; (e) requiring Plaintiffs to state the reasons that they needed bathroom breaks before granting them passes to use the bathroom, and also retaliating against Plaintiffs by denying them bathroom breaks when they refused the supervisors' and Plant Manager's overtures; and (f) assigning Plaintiffs to positions requiring heavy lifting after learning of Plaintiffs' injuries and requests for accommodation.

122. Upon information and relief, no male worker in the plant suffered from any of these actions, statements, harassment, or retaliation.

123. Defendant IDEAL SNACKS discriminated against Plaintiffs in regard to the terms, conditions, and privileges of employment in various ways because of their gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.

124. As a direct consequence of Defendant's actions, by and through the actions of its supervisors and Plant Manager, Plaintiffs suffered injuries, including trauma and severe emotional distress, wage suppression, and physical trauma and injuries.

**COUNT II**
**SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS**
**ACT OF 1964**
**(By All Plaintiffs Against Defendant)**

125. Plaintiffs incorporate all of the preceding allegations as if fully set forth below.

126. Plaintiffs were subjected to unwelcome, offensive, and harassing verbal and physical abuse during the entirety of their employment at IDEAL SNACKS by Defendant, through the conduct of Defendant's supervisors and Plant Manager.

127. Defendant IDEAL SNACKS subjected Plaintiffs to continuing sexual by, among other things:  (a) making derogatory comments to them about their manner of dress, parts of their bodies, personal and intimate relationships, children, and occupational abilities by male supervisors on a daily basis; (b) verbally abusing them by making lewd remarks, calling them whores and prostitutes, attacking their competence, and continually asking them to enter into a sexual relationship with them; (c) subjecting them to invasive questioning about their sexual activities with their husbands, their pregnancies, and other intimate matters; (d) creating an atmosphere that enabled other male workers to harass Plaintiffs; (e) denying Plaintiffs bathroom breaks unless they specified that the reason they needed such breaks, and in particular requiring them to state aloud that they had to deal with their menstrual periods; (f) bringing Plaintiffs to isolated areas of the Plant so that supervisors and the Plant Manager could

urge Plaintiffs to date them; and (g) subjecting Plaintiffs to invasive, humiliating, and offensive touching, including being grabbed on the buttocks while they were bent over cleaning machines or in isolated parts of the Plant.

128. Upon information and belief, no male co-workers were ever subjected to the same treatment or behaviors as Plaintiffs were required to undergo. No offensive comments were ever made by Defendant's supervisors and Plant Manager about male workers' manner of dress, anatomy, personal and intimate relationships, children, or occupational abilities nor were male workers ever required to give a "sufficient" reason in order to receive permission to take a bathroom break.

129. As a direct and proximate result of the harassing and hostile sexual environment at IDEAL SNACKS, Plaintiffs suffered severe humiliation, alienation, and mental and physical anguish and injuries.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII OF THE
## CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3(a)
## (By Plaintiffs Plaintiff 1, Plaintiff 3 and Plaintiff 7Against Defendant)

130. Plaintiffs 1, 3 and 7 incorporate all of the preceding allegations as if fully herein.

131. Plaintiffs 1, 3 and 7 were subjected to retaliation during their employment at IDEAL SNACKS after they complained about their supervisors' harassing and discriminatory behavior to Marvin Cardenas, the Plant Manager.

132. Plaintiffs suffered retaliation by Defendant, through the conduct of Defendant's supervisors and Plant Manager, in the form of, among other things: (a) moving Plaintiffs to other work units and assigning the least desirable responsibilities such as cleaning the Plant bathrooms, lifting heavy wood pallets, (b) making derogatory comments about Plaintiffs about their manner of dress, parts of their bodies, personal and intimate relationships, children, and

occupational abilities by male supervisors on a daily basis; (c) verbally abusing Plaintiffs by making lewd remarks, calling them whores and prostitutes, attacking their competence, and continually asking them to enter into a sexual relationship with them; (d) subjecting them to invasive questioning about their sexual activities with their husbands, their pregnancies, and other intimate matters; (e) refusing to accommodate Plaintiffs requests for shift changes to handle family matters; and (f) failing to give Plaintiffs pay increases that were given to the male workers in the Plant.

133.  Defendant IDEAL SNACKS unlawfully retaliated against Plaintiffs 1, 3 and 7 by taking retaliatory action against them when they complained about the discriminatory and harassing actions of their supervisors to Marvin Cardenas, the Plant Manager.

134. As a direct and proximate result of the retaliatory conduct by Defendant, through its supervisors and Plant Manager, Plaintiffs 1, 3 and 7 suffered severe humiliation, alienation, economic, and mental and physical anguish and injuries.

135.  As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination and retaliation against Plaintiffs, Plaintiffs have suffered and will continue to suffer pain, humiliation, and emotional distress.  Plaintiffs have suffered a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

136.  As a further direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964, as described, Plaintiffs have been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with the Defendant and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiffs.

137.  Plaintiffs are informed and believe, and based thereon alleges, that the Defendant's conduct as described above was willful, wanton, malicious, and done in reckless disregard for the safety and well-being of Plaintiffs. By reason thereof, Plaintiffs are entitled to punitive or exemplary damages from the Defendants in a sum according to proof at trial.

**COUNT IV:**
**DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW, N.Y. Exec. Law § 296**
**(By All Plaintiffs Against Defendant)**

138. Plaintiffs incorporate all of the preceding allegations as if fully set forth below.

139. Plaintiffs were subjected to continual, direct, intentional discriminatory treatment by Defendant, through the conduct of Defendant's supervisors and Plant Manager, during the entirety of their employment.

140. Defendant IDEAL SNACKS discriminated against Plaintiffs on the basis of their gender and created a hostile work environment for them and other women workers in the plant by, among other things: (a) assigning Plaintiffs to the most undesirable positions, such as cleaning the bathrooms and kitchen; (b) refusing Plaintiffs' requests for shift changes to accommodate their handling of family crises; (c) refusing to consider Plaintiffs for pay raises; (d) hovering over Plaintiffs while they were working to make overtures toward Plaintiffs regarding starting a sexual relationship with them, and then upon Plaintiffs' refusals, hovering to point out fabricated "errors" in their work; (e) requiring Plaintiffs to state the reasons that they needed bathroom breaks before granting them passes to use the bathroom, and also retaliating against Plaintiffs by denying them bathroom breaks when they refused the supervisors' and Plant Manager's overtures; and (f) assigning Plaintiffs to positions requiring heavy lifting after learning of Plaintiffs' injuries and requests for accommodation.

141. Upon information and relief, no male worker in the plant suffered from any of these actions, statements, harassment, or retaliation.

142. Defendant IDEAL SNACKS discriminated against Plaintiffs in regard to the terms, conditions, and privileges of employment in various ways because of their gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.

143. As a direct consequence of Defendant's actions, by and through the actions of its supervisors and Plant Manager, Plaintiffs suffered injuries, including trauma and severe emotional distress, wage suppression, and physical trauma and injuries.

**COUNT V**
**SEXUAL HARASSMENT IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW, N.Y. Exec. Law § 296**
**(By All Plaintiffs Against Defendant)**

144. Plaintiffs incorporate all of the preceding allegations as if fully set forth below.

145. Plaintiffs were subjected to unwelcome, offensive, and harassing verbal and physical abuse during the entirety of their employment at IDEAL SNACKS by Defendant, through the conduct of Defendant's supervisors and Plant Manager.

146. Defendant IDEAL SNACKS subjected Plaintiffs to continuing sexual by, among other things: (a) making derogatory comments to them about their manner of dress, parts of their bodies, personal and intimate relationships, children, and occupational abilities by male supervisors on a daily basis; (b) verbally abusing them by making lewd remarks, calling them whores and prostitutes, attacking their competence, and continually asking them to enter into a sexual relationship with them; (c) subjecting them to invasive questioning about their sexual activities with their husbands, their pregnancies, and other intimate matters; (d) creating an atmosphere that enabled other male workers to harass Plaintiffs; (e) denying Plaintiffs bathroom breaks unless they specified that the reason they needed such breaks, and in particular requiring

them to state aloud that they had to deal with their menstrual periods; (f) bringing Plaintiffs to isolated areas of the Plant so that supervisors and the Plant Manager could urge Plaintiffs to date them; and (g) subjecting Plaintiffs to invasive, humiliating, and offensive touching, including being grabbed on the buttocks while they were bent over cleaning machines or in isolated parts of the Plant.

147. Upon information and belief, no male co-workers were ever subjected to the same treatment or behaviors as Plaintiffs were required to undergo.  No offensive comments were ever made by Defendant's supervisors and Plant Manager about male workers' manner of dress, anatomy, personal and intimate relationships, children, or occupational abilities nor were male workers ever required to give a "sufficient" reason in order to receive permission to take a bathroom break.

148. As a direct and proximate result of the harassing and hostile sexual environment at IDEAL SNACKS, Plaintiffs suffered severe humiliation, alienation, and mental and physical anguish and injuries.

**COUNT VI**
**RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW, N.Y. Exec. Law § 296**
**(By Plaintiffs Plaintiff 1, Plaintiff 3 and Plaintiff 7Against Defendant)**

149. Plaintiffs 1, 3 and 7 incorporate all of the preceding allegations as if fully herein.

150. Plaintiffs 1, 3 and 7 were subjected to retaliation during their employment at IDEAL SNACKS after they complained about their supervisors' harassing and discriminatory behavior to Marvin Cardenas, the Plant Manager.

151. Plaintiffs suffered retaliation by Defendant, through the conduct of Defendant's supervisors and Plant Manager, in the form of, among other things:  (a) moving Plaintiffs to other work units and assigning the least desirable responsibilities such as cleaning the Plant bathrooms,

lifting heavy wood pallets, (b) making derogatory comments about Plaintiffs about their manner of dress, parts of their bodies, personal and intimate relationships, children, and occupational abilities by male supervisors on a daily basis; (c) verbally abusing Plaintiffs by making lewd remarks, calling them whores and prostitutes, attacking their competence, and continually asking them to enter into a sexual relationship with them; (d) subjecting them to invasive questioning about their sexual activities with their husbands, their pregnancies, and other intimate matters; (e) refusing to accommodate Plaintiffs requests for shift changes to handle family matters; and (f) failing to give Plaintiffs pay increases that were given to the male workers in the Plant.

152. Defendant IDEAL SNACKS unlawfully retaliated against Plaintiffs 1, 3 and 7 by taking retaliatory action against them when they complained about the discriminatory and harassing actions of their supervisors to Marvin Cardenas, the Plant Manager.

153. As a direct and proximate result of the retaliatory conduct by Defendant, through its supervisors and Plant Manager, Plaintiffs 1, 3 and 7 suffered severe humiliation, alienation, economic, and mental and physical anguish and injuries.

154. As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination and retaliation against Plaintiffs, Plaintiffs have suffered and will continue to suffer pain, humiliation, and emotional distress.  Plaintiffs have suffered a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

155. As a further direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964, as described, Plaintiffs have been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with

the Defendant and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiffs.

156.  Plaintiffs informed and believes, and based thereon alleges, that the Defendant's conduct as described above was willful, wanton, malicious, and done in reckless disregard for the safety and well-being of Plaintiffs. By reason thereof, Plaintiffs are entitled to punitive or exemplary damages from the Defendants in a sum according to proof at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief against Defendant IDEAL SNACKS as follows:

A.  Declare that Defendant intentionally violated Title VII as set forth in Counts I, II, and III;

B.  Grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57;

C.  Declare that Defendant intentionally violated N.Y. Exec. Law § 296 as set forth in Counts IV, V and VI;

D.  Award Plaintiffs damages in full for the unlawful discrimination they suffered under 42 U.S.C.A. § 2000e-3 and N.Y. Exec. Law § 296;

E.  Award affected Plaintiffs just damages for unlawful retaliation under 42 U.S.C.A. § 2000e-3 and N.Y. Exec. Law § 296;

F.  Award Plaintiffs their reasonable attorney's fees as provided Title VII and N.Y. Exec. Law § 297(10);

G.  Award Plaintiffs prejudgment and post-judgment interest as allowed by law; and

H.  Award Plaintiffs costs and any other relief as this Court deems just and proper.

Respectfully submitted,

Dated: January 3, 2018
      New York, NY


_____/s/_____
Natasha Lycia Ora Bannan
LatinoJustice PRLDEF
99 Hudson Street
14th Floor
New York, NY 10013
Tel. (212) 739-7539
nbannan@latinojustice.org

Barbara Olshansky Franco
LatinoJustice PRLDEF
99 Hudson Street
14th Floor
New York, NY 10013
Tel. (212) 219-3360
bolshansky@latinojustice.org


ATTORNEYS FOR PLAINTIFFS